RECEIPT # 52,093
AMOUNT $ 30.00
SUMMONS ISSUED yes
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. Kim Floud
DATE 12-1-03

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIRECT MARKETING CONCEPTS, INC. <br><br> Plaintiff, <br><br> v. <br><br> EDGE LABS, INC. <br><br> Defendant. | CIVIL ACTION NO. <br><br> 03-12403 JLT <br><br> MAGISTRATE JUDGE Collings |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. This is an action by Direct Marketing Concepts, Inc. ("DMC") against Edge Labs, Inc. ("Edge Labs") in which DMC seeks to recover the damages it has sustained as a result of Defendant's fraudulent inducement and breach of an agreement to manufacture, package, and deliver a dietary supplement known as coral calcium.

### I. PARTIES, JURISDICTION, AND VENUE

2. DMC is a corporation organized and existing under the laws of the Commonwealth of Massachusetts. DMC has a usual place of business at 900 Cummings Center, Suite B07-U, Beverly, Massachusetts 01915.

3. Upon information and belief, Edge Labs is a corporation organized and existing under the laws of the State of New Jersey, with a usual place of business at 470 Route 9, Englishtown, New Jersey 07105.

4. This court may exercise subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) in that this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

5. This court may exercise personal jurisdiction over Defendant in that it has transacted business in the Commonwealth of Massachusetts and has derived substantial revenue from goods used or consumed within the Commonwealth of Massachusetts. The acts and practices complained of arose out of the Defendant's transaction of business in the Commonwealth of Massachusetts.

6. Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events giving rise to Plaintiff's claim occurred in this judicial district.

## II. PLAINTIFF'S CLAIMS

### Background

7. DMC markets and sells a variety of health care related products and dietary supplements, including Coral Calcium Daily and CoralCal Daily ("Coral Calcium").

8. In or about May 2003, DMC was introduced to Edge Labs as a possible manufacturer of Coral Calcium. In several discussions that occurred between Jay Yucht, an employee of Edge, and Eileen Barrett and Robert Maihos of DMC during the last week of May 2003, Yucht represented repeatedly that Edge Labs had the capacity to, and could, deliver Coral Calcium ordered by DMC with a week to two weeks of receiving a purchase order from DMC. Mr. Maihos confirmed the importance of the delivery times to DMC's business and told Mr. Yucht that timely delivery was a significant part of the agreement between Edge Labs and DMC.

9. Based upon these representations made by Edge Labs, in late May and early June 2003 DMC entered into an agreement with Edge Labs in which Edge Labs would manufacture, package, and deliver Coral Calcium softgels and capsules for DMC (the "Agreement"). Throughout the process of becoming a customer of Edge Labs, Mr. Yucht continued to represent Edge Labs manufacturing capabilities and its ability to deliver product with a week to two weeks of a purchase order. For example, on June 10, 2003 Mr. Yucht confirmed in a telephone call his prior representations to Ms. Barrett and Mr. Maihos, and again confirmed them in an email dated June 11, 2003.

10. On May 23, 2003, DMC submitted Purchase Order 1023 to Edge Labs for 10,000 bottles of Coral Calcium softgels to be shipped by June 9, 2003. Mr. Yucht told Ms. Barrett and Mr. Maihos on May 23, 2003 over the telephone that the delivery of this order would occur on the date specified in the Purchase Order.

11. Notwithstanding the repeated representations by Edge Labs, DMC did not receive any softgels until June 25, 2003 -- over two weeks after the agreed-upon delivery date. Ms. Barrett telephoned Mr. Yucht on several occasions between June 9, 2003 and June 25, 2003 to express her concerns over Mr. Yucht's prior representations and to demand immediate delivery.

12. On June 9, 2003, DMC submitted Purchase Order 1028 to Edge Labs for 20,000 bottles of Coral Calcium capsules. Once again, Edge Labs confirmed that delivery of the entire order would occur within two weeks.

13. Notwithstanding the representations by Edge Labs, DMC received the following partial deliveries: (a) 4,080 capsules on July 7, 2003; (b) 5,040 capsules on July 9, 2003; (c) 2,400 capsules on July 17, 2003; and (d) 7,320 capsules on July 18, 2003. Thus, it took Edge Labs over five weeks to deliver some, but not all, of the product ordered by DMC. DMC once

again objected to this late delivery in several phone calls with Mr. Yucht, and were repeatedly assured that the delivery issues would be addressed and that product could be delivered with one to two weeks in the future.

14. Again based upon these representations that the delivery issues would be addressed, on June 30, 2003 DMC submitted Purchase Order 1034 for the manufacture and delivery of 10,000 bottles of capsules and 10,000 bottles of softgels. Yet again, on that date in a telephone call with Ms. Barrett, Mr. Yucht promised delivery of the product within one to two weeks. In addition, in response to a direct question about delivery times for additional orders, Mr. Yucht confirmed in an email to Ms. Barrett on July 8, 2003 that if DMC ordered an additional 20,000 capsules and an additional 20,000 softgels on that date, they would be delivered by the July 31, 2003.

15. Based upon these express representations, DMC placed Purchase Order 1036 with Edge Labs on July 8, 2003 for 20,000 capsules and 20,000 softgels. Thus, as of July 8, 2003, DMC had ordered 30,000 capsules and 30,000 softgels with a promised delivery date of no later than July 31, 2003, and additional product still had yet to be delivered under the June 9, 2003 purchase order.

16. Notwithstanding the representations made by Edge Labs, by the end of July, DMC had received only 10,234 bottles of softgels and 9,924 bottles of capsules. Additional partial deliveries trickled in over the next several weeks, including 3,249 capsules on August 4, 2003 4,499 capsules on August 6, 2003. Once again, throughout this period, Mr. Yucht continued to represent that the delivery problems would be addressed and that future orders would be delivered in a timely fashion.

17. Based upon the continued representations of Edge Labs, on July 11, 2003 DMC submitted Purchase Order 1039 to Edge Labs for 20,000 bottles of capsules and Purchase Order 1040 for 5,000 bottles of softgels.

18. On July 17, 2003, once again based upon the representation by Edge Labs that its manufacturing and delivery problems would be fixed, DMC placed a standing purchase order with Edge Labs to manufacture, package, and deliver to DMC 15,000 bottles of capsules and 5,000 bottles of softgels per week beginning in August, 2003. The Purchase Order was subject to cancellation by DMC with fourteen days written notice to Edge Labs. On July 17, 2003, in a telephone conversation Mr. Yucht again confirmed to Ms. Barrett that delivery would occur weekly and that there would be no issues with timely delivery going forward.

18. Through the entire month of August, 2003, Edge Labs did not deliver any capsules to DMC in accordance with Purchase Order 1044. Instead, the capsules DMC received in August, 2003 were late deliveries in response to previously submitted orders.

19. Through the entire month of August, 2003, Edge Labs did not deliver any softgels to DMC, even though Purchase Order 1044 required the delivery of 5,000 bottles of softgels per week.

20. Due to Edge Labs' false representations about its capacity to manufacture and deliver product weekly, and failure to provide softgels or capsules in a timely manner in accordance with prior purchase orders, DMC canceled the Purchase Order in writing, via electronic mail, on August 20, 2003.

21. Thereafter, in response to the still unfilled prior purchase orders, DMC finally received 20,088 capsules on September 2, 2003, and 9,552 capsules on September 4, 2003.

22. On September 5, 2003, DMC provided written notice, via facsimile, to Edge Labs that it was canceling all future orders or Coral Calcium.

## COUNT I
### (Fraud/Misrepresentation)

23. Plaintiff repeats and reavers paragraphs 1-22 as if set forth fully herein.

24. In an effort to induce DMC into entering into an initial contract and subsequent purchase orders with DMC, Edge Labs made representations to DMC about its manufacturing capabilities and its ability to deliver product in a timely manner to DMC.

25. At the time it made these representations to DMC in or about May, 2003, Edge Labs knew or was reckless in not knowing that it could not produce the volume of capsules and softgels DMC required each week.

26. Edge Labs knew or should have known that DMC was relying upon its representation about its manufacturing capabilities in deciding to enter into a contract with Edge Labs and submit purchase orders to Edge Labs.

27. By virtue of the foregoing, DMC has suffered substantial harm and damage including, without limitation, loss of customers and damage to its business reputation.

## COUNT II
### (Violation of M.G.L. c. 93A)

28. Plaintiff repeats and reavers paragraphs 1-27 as if set forth fully herein.

29. DMC and Edge Labs are engaged in the conduct of trade or commerce within the meaning of M.G.L. c. 93A, Section 11.

30. The acts of Edge Labs detailed above constitute unfair and deceptive acts or practices in violation of M.G.L. c. 93A, Section 11.

31. The actions of Edge Labs detailed above were undertaken willfully and knowingly.

32. The acts complained of occurred primarily and substantially in the Commonwealth of Massachusetts.

33. By virtue of the foregoing, DMC has suffered substantial harm and damage including, without limitation, loss of customers and damage to its business reputation.

## COUNT III
### (Breach of Contract)

34. Plaintiff repeats and reavers paragraphs 1-33 as if set forth fully herein.

35. Edge Labs agreed to provide DMC with 15,000 bottles of Coral Calcium capsules and 5,000 bottles of softgels each week beginning in August, 2003.

36. Edge Labs breached its agreement with DMC by failing to deliver capsules in accordance with the terms of the agreement.

37. Edge Labs breached its agreement with DMC by failing and refusing to deliver softgels in accordance with the terms of the agreement.

38. By virtue of the foregoing, DMC has suffered substantial harm and damage including, without limitation, loss of customers and damage to its business reputation.

## COUNT IV
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

39. Plaintiff repeats and reavers paragraphs 1-38 as if set forth fully herein.

40. Edge Labs breached the covenant of good faith and fair dealing implied in its agreements with DMC by failing to provide timely delivery of any bottles of Coral Calcium softgels to DMC in connection with its agreement.

41. Edge Labs breached the covenant of good faith and fair dealing implied in its agreements with DMC by failing to provide timely delivery of any bottles of Coral Calcium capsules to DMC in connection with DMC's August, 2003 purchase order.

42. By virtue of the foregoing, DMC has suffered substantial harm and damage including, without limitation, loss of customers and damage to its business reputation.

### III. RELIEF REQUESTED

WHEREFORE, Plaintiff, Direct Marketing Concepts, Inc., demands:

a. With respect to Count I, that the Court order Defendant, Edge Labs, Inc., to pay to Plaintiff the damages sustained by DMC, in an amount to be determined, together with interest and costs.

b. With respect to Count II, that the Court order Defendant, Edge Labs, Inc., to pay to Plaintiff the damages sustained by DMC, in an amount to be determined, together with interest and costs, as well multiple damages as provided by M.G.L. c. 93A and reasonable attorneys fees.

c. With respect to Count III, that the Court order Defendant, Edge Labs, Inc., to pay to Plaintiff the damages sustained by DMC, in an amount to be determined, together with interest and costs.

d. With respect to Count IV, that the Court order Defendant, Edge Labs, Inc., to pay to Plaintiff the damages sustained by DMC, in an amount to be determined, together with interest and costs.

e.  That the Court grant such other and further relief as it deems just and appropriate.

THE PLAINTIFF DEMANDS A TRIAL BY JURY

DIRECT MARKETING CONCEPTS, INC.

By their attorneys,

Christopher F. Robertson (BBO No. 642094)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

DATED: November 26, 2003